CLEBURNE ELECTRIC & GAS CO. v.
McCOY et al.†

(Court of Civil Appeals of Texas. Dallas.
June 1, 1912. Rehearing Denied
June 29, 1912.)

1. REMOVAL OF CAUSES (§ 56*)—SEPARABLE CONTROVERSY.

Where M. sues E., both being residents of the state, and by cross-action E. asks judgment over against T., a citizen of another state, in case M. recovers judgment against E., the cross-action is so dependent on the main action that there is no such separable controversy between E. and T. as to entitle T. to removal to the federal court.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 108; Dec. Dig. § 56.*]

2. DEPOSITIONS (§ 81*)—CORRECTION.

Where a deposition was taken by the answers being taken in shorthand and afterwards transcribed, and there was a clerical error in transcribing the notes, correction thereof may be made after the deposition is returned into court and filed.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 213–217; Dec. Dig. § 81.*]

3. ELECTRICITY (§ 19*) — NEGLIGENCE OF AGENTS—LIABILITY—EVIDENCE.

Evidence in an action for death of an employé of a telephone company by contact of its wire with a charged wire of an electric company held to justify the conclusion that the death was caused by the negligent omissions by such agents of the electric company as constituted such omissions the negligence of the electric company.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

4. ELECTRICITY (§ 17*) — NEGLIGENCE OF AGENTS—LIABILITY.

The vice president and manager of an electric company having directed employés of it to discover and remove the contact of its wire with that of a telephone company, and to have the electricity turned on when in their judgment the wires were clear, any negligence of them in respect thereto was its negligence, so as to render it liable for death of an employé of the telephone company if proximately caused by such negligence.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 17.*]

5. TRIAL (§ 219*) — INSTRUCTIONS — DEFINITIONS — CONTRIBUTORY NEGLIGENCE—ORDINARY CARE.

An instruction in an action for negligent injury of M., which, after stating that it was his duty to exercise ordinary care to protect himself, without defining ordinary care, tells the jury that "as to what ordinary care was under the circumstances is for you to determine, taking into consideration all of the facts and circumstances surrounding and known to M. at the time," is objectionable as leaving it to them to determine what ordinary care was under the circumstances.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 489; Dec. Dig. § 219.*]

6. DEATH (§ 104*)—DAMAGES—INSTRUCTIONS.

An instruction, in an action by the widow and minor children of M. for damages for his negligent killing, to allow a sum which will compensate for the loss of such pecuniary benefits as plaintiffs had a reasonable expectation of receiving from M. had he lived, including in the case of a minor child the reasonable value of such nurture, care, and education as the child would have received from deceased had he lived, is erroneous in not limiting to their minority the benefits which the minors had a reasonable expectation of receiving from him for nurture, care, and education, in the absence of evidence that they had some reasonable expectation of receiving contributions from him therefor after reaching their majority, and of evidence on which to determine the amount of such contributions.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 142–148; Dec. Dig. § 104.*]

7. APPEAL AND ERROR (§ 736*) — GROUPING ASSIGNMENTS OF ERROR.

Grouping assignments of error presenting separate, distinct, and unrelated questions is violative of the rules for briefing, so that they will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3028, 3029; Dec. Dig. § 736.*]

8. TRIAL (§ 253*)—INSTRUCTIONS—REFUSAL OF REQUESTS.

Refusal of a requested instruction, called for by the evidence and not sufficiently covered by charges given, is error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

9. ELECTRICITY (§ 19*)—INJURIES—NOTICE OF DANGER—EVIDENCE.

On the question of negligence of an electric company, by the charged wire of which, in contact with the wire of a telephone company, an employé of the telephone company, at work on its pole, was killed, notice to the electric company, from observation of its employés, that he was working there in the morning before the accident is not enough to warrant the conclusion that it had notice he was working there in the afternoon when the accident occurred.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

10. ELECTRICITY (§ 16*) — INJURIES — PROXIMATE CAUSE.

If failure of a telephone company to insulate its wire was the cause of electricity being communicated thereto from the wire of an electric company and was the proximate cause of the injury of an employé of the telephone company, the electric company was not liable therefor.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9; Dec. Dig. § 16.*]

11. CONTRIBUTION (§ 5*)—JOINT TORT-FEASORS.

Where two are guilty of negligence which proximately causes or contributes to the injury of a third, the one of them of whom he recovers cannot have indemnity or contribution from the other.

[Ed. Note.—For other cases, see Contribution, Cent. Dig. §§ 6–9; Dec. Dig. § 5.*]

12. EVIDENCE (§ 514*)—OPINIONS—SUBJECT OF EXPERT TESTIMONY.

Whether, in the operation of an electric light plant, a ground having come on the line and a lineman having unsuccessfully searched two or three hours for it, but it still being known to be on, it would be proper to turn the electricity on is a subject of expert testimony.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2319–2323; Dec. Dig. § 514.*]

13. APPEAL AND ERROR (§ 971*)—EVIDENCE (§ 546*) — OPINIONS — QUALIFICATION OF EXPERTS—REVIEW OF DISCRETION.

Whether a witness has qualified himself to testify as an expert is a subject for the determination of the trial court; its action in

which will not be disturbed unless gross abuse of discretion appears.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3852–3857; Dec. Dig. § 971;* Evidence, Cent. Dig. § 2363; Dec. Dig. § 546.*]

14. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Where evidence, though inadmissible, could have resulted in no substantial injury, error in its admission is not ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Action by Mrs. Lertie McCoy and others against the Cleburne Electric & Gas Company. Defendant impleaded the Southwestern Telegraph & Telephone Company. From an adverse judgment, defendant appeals. Affirmed in part, and reversed and remanded in part.

M. B. Templeton, of Dallas, and Wm. Poindexter and S. C. Padelford, both of Cleburne, for appellant. Walker & Baker, and Odell & Ramsey, all of Cleburne, and A. P. Wozencraft and W. S. Bramlett, both of Dallas, for appellees.

TALBOT, J. This is the second appeal of this case. The opinion on the former appeal will be found in 128 S. W. 457. The suit was instituted by Mrs. Lertie McCoy, for herself and minor children, Ray McCoy and Charlie McCoy, in 1908, against the appellant, the Cleburne Electric & Gas Company, to recover damages sustained by them on account of the death of the said C. W. McCoy, husband of Mrs. Lertie McCoy and father of her said children, charged to have been caused by the negligence of appellant. The petition alleged, in substance, that the defendant, a corporation created under and by virtue of the laws of the state of Texas, operated an electric light plant in the city of Cleburne by means of poles and wires stretched thereon along and over the different streets of said city, and that the Southwestern Telegraph & Telephone Company, also a corporation, likewise operated a telephone plant in said city; that on North Anglin street the Telephone Company stretched a drop wire from one of its poles on the east side of said street under the wires of the defendant connecting with a telephone in the house of Mr. Norseworthy, situated on the west side of said street; that on the 31st day of January, 1908, C. W. McCoy, while in the performance of his duties as an employé of the Telephone Company on a telephone pole of said company, came in contact with a live wire of the Telephone Company, the electricity being communicated thereto by a wire of defendant charged with about 1,100 volts, which passed into and through the body of the said McCoy, from the effects of which he died.

The grounds of negligence charged and submitted by the court were substantially as follows: (1) That, while performing work on its wires running above the Norseworthy telephone line the day before the accident, the appellant caused its wires to sag and come in contact with the telephone wires, and then failed to discover and remove the same. (2) That appellant discovered about 5 o'clock on the morning preceding McCoy's injury that its wires were "grounded," and probably in contact with the telephone wires, and in ample time to have discovered and removed the contact, and that it failed to make a proper inspection of its wires to discover and remove the "ground" or place of contact. (3) That after appellant knew that McCoy was working on the pole on which he was injured among the telephone wires, and after it knew that it had not discovered and removed the "ground," or place of contact, it turned onto its wires a heavy charge of electricity calculated to injure or cause the death of any person coming in contact with it.

The defendant, Cleburne Electric & Gas Company, pleaded general and special demurrers, a general denial, assumed risk, contributory negligence, and specially, among other things, that the defendant, being a corporation, it could not, under the law of this state, be held responsible to the plaintiffs for the negligence of its servants and agents; that, if any person's negligence caused the death of C. W. McCoy, it was not the negligence of the defendant, but was the negligence of the Southwestern Telegraph & Telephone Company, or the negligence of the said McCoy himself; that the wire of the defendant at the point of contact with the Telephone Company's wire was insulated, but that the wire of the Telephone Company was not insulated; that the negligence of the Telephone Company in stretching an uninsulated wire underneath and so close to defendant's wires was the proximate cause of C. W. McCoy's death; that C. W. McCoy, before and at the time of his injury and death, was an employé of the Telephone Company; that it was his duty to inspect and repair the lines of the Telephone Company; that he was an experienced lineman and well understood the dangerous character of his work; that, at the time he was injured, he was at work on the Telephone Company's wires and knew the wires of the defendant and of the Telephone Company were in contact between the pole upon which he was at work and the next pole south, and that it was dangerous to go upon said pole and work with or among the wires thereon. Said defendant also by an amended answer filed January 19, 1911, impleaded the Southwestern Telegraph & Telephone Company, and by way of cross-action against that company charg-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

ed, so far as is necessary to state, that said Telephone Company constructed its wires crossing Anglin street under the wires of the Electric Company about the 1st day of January, 1907; that said telephone wires were not insulated; that the same passed through the limbs of a tree; that said telephone wires were suspended near or close to the Electric Company's wires; that proper construction required the telephone wires to be insulated and to be grounded and to be free from obstructions such as trees and limbs, all of which the Telephone Company failed to do; that McCoy was an employé of the Telephone Company, as an inspector, a trouble-shooter, a finder of defects and contacts, whose duty it was to remedy the same, and that McCoy should have known, from the conditions existing, all the dangers incident to the performance of his labors, and that, if he did not, the fault lies with the Telephone Company either in failing to instruct him as to his duties or warning him of the dangers or in keeping him in that employ without such knowledge, and that the Telephone Company was guilty of negligence in failing to notify the Electric Company of the hazardous conditions existing so that proper precautions could be taken; that it is customary for telephone companies, where trouble happens on their lines, to make or cause to be made inspection as to the condition of its wires, especially where the same pass near electric wires, and to inspect the appliances in the central office and apply tests to locate trouble so that proper inspection and all existing interferences, contacts, etc., can be ascertained and remedied, and a failure to use and employ these precautions and make these inspections, give these directions, etc., is a failure to perform a duty devolving upon the Telephone Company, and this the Telephone Company did not do; that if McCoy was injured, as alleged by plaintiffs, then the Telephone Company was the active wrongdoer, and, if the plaintiffs recovered against it in any sense, then the Electric Company should have judgment over against the Telephone Company for a like sum; and such was the Electric Company's prayer.

The Southwestern Telegraph & Telephone Company on the 30th day of December, 1910, filed its petition and bond, as prescribed by law, to remove the cause to the Circuit Court of the United States, at Dallas, which application was by the district court denied, and said company then answered the cross-action of the defendant Electric Company and pleaded general and special exceptions, a general denial, and specially that the Electric Company ought not to recover against it, for that the deceased was employed by it at the time of his injury as a lineman and inspector, and that it was the duty of the deceased to look after, discover, and remedy all defects, and cure all "trouble that might exist in its telephone wires, cables, poles, or equipment," and keep them in proper operation; that it was the special duty of the deceased, McCoy, at the time he was injured, to go to the place where he was injured and to discover the cause of and correct and remedy any defects or trouble that might exist in and near said place in its telephone wires and poles or other equipment; that the deceased, McCoy, went to the place where he did go, knowing that there was trouble at said point by reason of an electric current coming in contact with the telephone wire or equipment of the Telephone Company, and knew and realized the danger of coming in contact with an electric current such as he did come in contact with at the time and place he was injured; that the Telephone Company did not direct in any manner the way or form in which said work should be done by the said C. W. McCoy, but that the same was in the exclusive charge of the said McCoy himself; that, by reason of all the facts, the said C. W. McCoy assumed the risk of being injured in the manner he was injured, and that, in being injured, he was guilty of contributory negligence; that by reason of the assumption of the risk, and by reason of his contributory negligence, the said C. W. McCoy, the plaintiffs would not be entitled to recover against the Telephone Company for any damages resulting to them by reason of the death of the said C. W. McCoy, and that by reason of said facts the defendant Electric Company is not entitled to recover over against the Telephone Company. The Telephone Company further plead the statute of limitations of two years to the cause of action set up by the defendant, the Electric Company, against it. The plaintiff, by first supplemental petition, denied the allegations set forth in the answer and cross-bill of the Electric Company, and alleged knowledge of the dangerous condition of the place of contact on the part of the Electric Company; that McCoy was an employé of the Telephone Company in a subordinate position, and that it was his duty to remedy only such defects and trouble as were pointed out and reported to him by C. S. Peyton, who was wire chief; and that it was not McCoy's duty to inspect the lines of the company. The Electric Company filed a supplemental answer which contained special exceptions and a general denial of the matters set forth in plaintiffs' supplemental petition. On the 23d day of January, 1911, the defendant Electric Company presented a plea in abatement or plea protesting against the court trying the cause on the ground that the Circuit Court of the United States at Dallas had jurisdiction of the cause by reason of the filing of the petition and bond by the Telephone Company for removal. This plea was overruled, and the case went to trial before the court and a jury, and the trial resulted in

a verdict and judgment in favor of the plaintiffs against the Electric Company for the sum of $12,000, and that the Electric Company take nothing by its cross-bill against the Telephone Company. The motion of the Electric Company being overruled, it appealed.

[1] The first assignment of error challenges the correctness of the court's action in refusing, upon the petition of the Telephone Company, to remove the cause to the Circuit Court of the United States for the Northern District of Texas, and in overruling the Electric Company's plea in abatement or plea protesting against the trial of the case in the district court of Johnson county, Tex., on the ground that the latter court had lost jurisdiction by reason of the filing of the petition and bond for removal by the Telephone Company.

The petition for removal was based on diverse citizenship. It set up that the plaintiffs were, at the time of the commencement of this suit, March 4, 1908, and are now, resident citizens and inhabitants of the state of Texas, and that petitioner, the Telephone Company, was at the commencement of the suit and at the time of the filing of said petition for removal a resident citizen and inhabitant of the state of New York; that at the time the defendant, the Electric Company, filed its cross-bill herein against petitioner, and at the time of the filing of the petition for removal, said company was a resident citizen of the state of Texas, and an inhabitant thereof, being a corporation duly incorporated under and by virtue of the laws of the state of Texas. At the time of the presentation and filing of the petition for removal, the Telephone Company also presented a bond as required by law which was approved and filed. Appellant seems to assume that the right of removal existed, and cite only authorities bearing upon the method prescribed therefor, and the duty of the court when the conditions precedent to a removal have been performed. These questions have given us no difficulty. It cannot be questioned that, when a proper petition and bond, in a removal case, have been made and filed in compliance with the statute, it is the duty of the court to accept said petition and bond and proceed no further in the suit. Upon the filing of such a petition and bond, the suit being removable under the statute, the jurisdiction of the state court ceases, and that of the Circuit Court of the United States immediately attaches. Tex. & Pac. Ry. Co. v. Davis, 93 Tex. 378, 54 S. W. 381, 55 S. W. 562.

The difficult question arising upon the assignment of error is whether or not the case is a removable one, and this involves the question of whether the cause is separable into parts, so that in one of the parts a controversy will be presented wholly between citizens of different states which can be ful-

ly determined without the presence of the other parties to the suit. As has been seen, the suit was instituted by Mrs. Lertie McCoy for herself and her minor children, who are citizens of the state of Texas, against the Electric Company, a corporation and citizen of the same state, to recover damages on account of the death of C. W. McCoy, husband of Mrs. McCoy and father of her said children, alleged to have been caused by the negligence of said defendant. Some time after the institution of the suit the Electric Company, by an amended answer and cross-bill, impleaded the Telephone Company, and, upon the allegation of facts showing that the Telephone Company was an active tort-feasor or alone responsible for the death of the said C. W. McCoy, by reason of its active negligence, which was the direct and proximate cause thereof, prayed that, in the event the plaintiffs recover a judgment against it for any sum, it recover a judgment over against the Telephone Company for a like sum. The Telephone Company, a citizen of the state of New York, having been brought into the case by the cross-action of the original defendant, the Electric Company, in which a judgment is asked only in the event the plaintiffs recover a judgment against the Electric Company, did the Telephone Company have the right to remove the case to the Circuit Court of the United States upon the filing of its petition and bond therefor? We have been unable to find any case deciding the precise question. Numerous decisions may be found in which it has been held that, "to entitle a defendant to a removal on account of the separability of a controversy from the rest of the case, there must exist a separate cause of action on which a separate suit could be brought and complete relief afforded distinct from the rest of the case, and of which all the parties on one side are citizens of different states from all the parties on the other." Foster's Federal Practice (3d Ed.) vol. 2, § 384, and cases cited in note. The suit must be one in which the whole subject-matter of the suit can be determined as between the parties to the separable controversy without the presence of the other parties to the suit, and without the judgment affecting the others. Moon on the Removal of Causes, § 140. But a supplemental, ancillary, auxiliary, or dependent proceeding is not a suit within the meaning of the removal statute, and such a proceeding, begun in a state court, is not removable apart from the suit upon which it is dependent. Moon on Removal of Causes, § 45.

In the case at bar it is doubtless true that the Electric Company's cross-bill against the Telephone Company exhibited a controversy between those two companies in which the plaintiffs were not concerned, but the Electric Company's right to recover on said bill against the Telephone Company is made, by

its very allegations, to depend solely upon a recovery by plaintiffs against it. It is only upon the happening of such a contingency is any judgment whatever asked against the Telephone Company, and of course a failure on the part of plaintiffs to recover against the Electric Company would result in the defeat of the company's cross-action against the Telephone Company. It would therefore seem to follow that said cross-action is absolutely dependent upon the suit of the plaintiffs against the Electric Company, and, like a garnishment, attachment, or some similar proceeding, is not removable apart from the suit upon which it is dependent. As has been seen, the Electric Company in its cross-action asks judgment against the Telephone Company only in the event the plaintiffs recover judgment against it. So that, if the controversy arising on the cross-action between the Electric Company and the Telephone Company should be removed to the federal court, leaving the residue of the suit to proceed in the state court, the federal court will be placed in the anomalous position of having a case before it in which the party prosecuting it is in no event entitled to recover unless the plaintiffs in that part of the suit remaining in the state court are successful, and which, though regularly reached and called for trial, cannot be proceeded with until that part of the suit in the state court is disposed of. It was never intended or contemplated by the lawmakers, we believe, that the removal statutes should be used to bring about such results. We therefore hold that the cross-action of the Electric Company against the Telephone Company was so dependent upon the suit of the plaintiffs against the Electric Company that no such separable controversy is shown as entitled the Telephone Company to remove the case to the Circuit Court of the United States.

[2] The second assignment complains of the court's action in permitting the plaintiffs to correct and change the depositions of C. S. Peyton, an employé of the Telephone Company, after the same had been returned into court and filed. We do not think this action of the court constitutes reversible error. As we understand the matter, the deposition of the witness was taken by oral questions and answers before J. A. Feagin, a notary public and stenographer of the lower court. The answers were taken down in shorthand and afterwards transcribed, but were not read over or signed by the witness; all formalities in the taking and filing of the depositions having been waived. During the taking of the depositions the witness read, in response to questions, an impression copy of a report of C. W. Mc-Coy's accident to his superior, in which was the following statement: "He (C. W. McCoy) was not working on the wire he was shocked on at the time of his injuries." The notary

took down the statement correctly, but in transcribing his notes inadvertently and by mistake left out the word "not." After discovering the omission, the plaintiffs made a motion to have the deposition corrected. The motion was sustained, the correction made, and the defendant excepted. There seems to be no controversy as to the fact of the omission and that it was simply a clerical error of the notary in transcribing his notes. Under these circumstances, we can see no good reason why the correction should not have been allowed and the record made to speak the truth. It may be true that ordinarily it would be a dangerous rule of practice to permit depositions, after they have been filed and become a part of the record, to be attacked and an issue raised with a view to add to or strike from them, but where, as in the present case, a mere clerical error has been inadvertently made, and about which there can be no dispute, its correction can result in no injury to the party in whose favor it operates, of which he can complain, and it is but fair and just to the party against whom the error was made that it be corrected.

[3, 4] It is assigned that the court erred in refusing to instruct the jury to return a verdict in favor of the defendant, the Electric Company. The propositions contended for under this assignment are substantially the same as those urged on the former appeal of this case, namely: (1) That the defendant was not guilty of any actionable negligence proximately resulting in the death of the husband and father of the plaintiffs; (2) that the deceased was an inspector of the plant and wires of the Telephone Company, and on the morning of the day he was injured he had full knowledge and notice that there was trouble on the lines of the Telephone Company on North Anglin street, and that he assumed the risk of danger of performing the work in which he was engaged; (3) that, in permitting his body to come in contact with the live wire and ground wire, he was guilty of contributory negligence precluding the right of recovery against the defendant; (4) that, if the death of the deceased, McCoy, was the result of negligence on the part of any servant or employé of the defendant, such servant or employé was not that character of agent whose act could be declared to be the act of the defendant, and therefore defendant was not liable under the statute of this state for any damages suffered by plaintiffs on account of the death of the said McCoy.

These contentions were not sustained on the former appeal, because we were then of the opinion that the evidence was of such a character as to require the submission of the questions involved to the jury for their determination. The evidence contained in the record now before us, as we understand it, is not materially different from that on the

former appeal, and, as a consideration of the case has resulted in no change of our views in regard to the probative force of the evidence and the law applicable thereto, the assignment under consideration will be overruled. Whether the defendant, the Electric Company, was guilty of actionable negligence, proximately resulting in the death of C. W. McCoy, and whether the said McCoy assumed the risk or was guilty of contributory negligence in the performance of the work he was doing at the time he received the injuries which resulted in his death, were issuable facts for the decision of the jury, and the court was not authorized under the evidence to say, as a matter of law, that the servants of the Electric Company, who are charged with the acts and omissions alleged to have resulted in the death of C. W. McCoy, were not such representatives of the company as to render the company liable for such acts or omissions. The evidence was sufficient to justify the conclusion that the death of McCoy was caused by the negligent acts or omissions of such agents of the Electric Company as constituted them the negligent acts or omissions of the corporation itself.

J. D. Oliger was vice president and manager of the Electric Company, and the evidence is ample to show that Tom Howell was its chief lineman and inspector and had general charge and control of repairs and the installation of new work; that Oliger knew of the ground on the electric wires at about 5:30 o'clock a. m. on the day McCoy was injured, and sent out Howell and Giles to find the ground and remove it; that Oliger knew the telephone men were working on their wires fixing trouble more or less all the time, and that he said nothing to the Telephone Company or any of its employés about the ground; that he (Oliger) left the whole matter of finding the wires, the ground and contact of the wires, and of instructing the engineer when to turn on the current, to Howell and Giles; that there were no instructions to Howell or Giles to report to him, but that he told them to tell Campbell, the engineer, to turn on the electricity when the lines were clear; that they told the engineer the line was clear, and that Campbell, in obedience to Oliger's instructions, turned on the current; that the determination of the question of when the wires were "clear" was left to Howell and Giles, or one of them, and the engineer; that later Oliger himself directed that the current be turned on and left on; that at this time he probably knew the cause of the wire trouble had not been found, and further that he knew that, if the telephone wire with which the electric wire was probably in contact was not well grounded, there would be no indication of the contact on the detector at the power house.

The testimony was further sufficient to warrant findings that the Electric Company's linemen, Howell and Giles, failed to exercise ordinary care to discover the contact of the wires and remove it; that they saw McCoy working about 10:30 o'clock a. m., of the day he was injured, on the pole on which he subsequently received the shock of electricity that caused his death; that they knew at this time that the electric wires were in contact with the telephone wires; and that they then returned and directed the current of electricity to be turned on. Under this and other testimony in the case, the court would not have been warranted in directing a verdict for the appellant. The discovery and removal of the contact of the wires was a corporate duty resting upon appellant, and when it intrusted the performance of that duty, through its vice president and general manager, J. D. Oliger, to Howell and Giles, any negligent act or omission on their part with respect thereto became and were the acts, omissions, or default of appellant, rendering it liable for the consequences thereof. Likewise, would any negligent act of Howell and Giles, or either of them, in directing the current of electricity to be turned on, be the act of appellant? This view seems to be sustained by several decisions of our appellate courts, and especially by the recent decision of our Supreme Court in the case of Sullivan-Sanford Lumber Co. v. Cooper (Sup.) 142 S. W. 1168. In that case the company was not held responsible for the death of Cooper, because it was the result of the negligence of a mere employé, Ned Barlow, of the company in doing an act which he had not been directed by the company's vice principal, Wilson, to do. In discussing the case, Mr. Chief Justice Brown, speaking for the court, said: "We will assume that, if the acts of Ned Barlow, done in removing the taps from the bolts, had caused the death of Cooper, it would have charged the corporation with responsibility for such death, because it would have been negligence in Wilson to do an act which would, however done, have caused the log to roll down upon Cooper. But it was not the act which Wilson authorized Barlow to do, but the negligent striking of a lever which had no connection with the removal of the taps from the bolts. If Wilson had told Barlow to move the lever, then there would have been liability, because the act of moving the lever necessarily released the log which caused the death of Cooper." If, therefore, Oliger directed Howell and Giles to discover and remove the contact of appellant's wire with the Telephone Company's wire, and to have the current of electricity turned on when in their judgment the wires were clear, any negligence they may have been guilty of in respect thereto was the negligence of the appellant, the Electric Company, and, if the proximate cause of McCoy's death, rendered it liable for such dam-

ages as the plaintiffs sustained by reason thereof.

[5] On the subject of contributory negligence, among other things, the court charged the jury: "That it was the duty of Charlie W. McCoy to exercise ordinary care and prudence in protecting his person from injury, and as to what ordinary care was, under the circumstances, is for you to determine, taking into consideration all of the facts and circumstances surrounding and known to McCoy at the time of his alleged injury." This charge is objected to on the ground that it improperly instructed the jury that it was for them "to determine what ordinary care was under the circumstances." We think the objection is well taken. The accepted definition of "ordinary care" is that degree of care which a person of ordinary prudence would exercise under the circumstances of the situation, or what an ordinarily prudent person would do under the same or similar circumstances. This rule should have been given the jury as a guide in determining whether or not the deceased, McCoy, exercised that degree of care for his own protection exacted of him by law, instead of leaving the matter open to the determination of the jury from the circumstances of the case, without a rule by which to be governed in reaching a conclusion. Whether McCoy was guilty of negligence which contributed to his injury and death was not to be determined by what he did under the particular circumstances, but by what *an ordinarily prudent person* would have done under the circumstances surrounding him at the time. The court erred in instructing that it was for them to determine what constituted ordinary care, and we are not prepared to say that the error was cured, or the probable injury done appellant thereby removed, by subsequent portions of the general charge or special charges given.

[6] On the measure of damages, the jury was charged: "If you find for the plaintiffs, you are instructed to find for them such an amount as is fairly proportioned to the injuries sustained, if any, and which will be a present compensation for the loss of such pecuniary benefits as the plaintiffs had a reasonable expectation of receiving from said Charles McCoy had he lived—by pecuniary benefits is meant not only money, but everything that can be valued in money, and in the case of a minor child include the reasonable value of such nurture, care, and education as the child would have received from the deceased parent had he lived—but you will not allow the plaintiffs anything by way of solace for the death of said Charles McCoy, or for any sorrow or anguish suffered by them by reason of his death, or for the loss of his society, affection, or comfort." This charge is assigned as error; the main objection thereto being that it does not limit the "benefits which the minor plaintiffs had

a reasonable expectation of receiving from their father, C. W. McCoy, had he lived, for nurture, care, and education" to the period of their minority. This assignment must be sustained. There is no evidence whatever that the minors had any expectation or that there was any probability of their receiving anything from their father, had he not been killed, after majority. The charge was without limit as to the time the jury should consider in arriving at the loss the minors sustained in being deprived of the benefits they had a reasonable expectation of receiving for nurture, care, and education from their father had he lived. It was broad enough to authorize a recovery of the value of such nurture, care, and education which the jury might conclude, without the aid of testimony, that C. W. McCoy, had he lived, might have contributed to the minors after they arrived at the age of 21 years. Without evidence that they had some reasonable expectation of receiving contributions from their father for nurture, care, or education after reaching their majority, and some evidence upon which to determine the amount or value of such contributions, the minors were not entitled to recover anything therefor, and the charge, without limiting their right to recover for those things to the time of their minority, was error. Railway Co. v. Worthy, 87 Tex. 465, 29 S. W. 376; Tex. & Pac. Ry. Co. v. Gullett, 134 S. W. 262.

[7] Assignments of error 24 to 28, inclusive, are improperly grouped. They present separate, distinct, and unrelated questions for decision, and are therefore violative of the rules prescribed for the briefing of cases and will not be considered.

[8] Complaint is made of the court's refusal to give the Electric Company's special charge No. 22, which reads thus: "You are further instructed that if you find from the evidence that after J. D. Oliger, the Cleburne manager of the defendant's company, learned that there was a ground on the defendant's system, he thereafter used ordinary care to find where said ground wire was and remedy same—that is, that he sent out two competent linemen to find said ground wire—and if you further find that the engineer of the said defendant tested out the circuit on North Anglin street, and that the test showed that there was no ground, and that, with the facts before him, he (J. D. Oliger) believed that there was no ground on the circuit on North Anglin street, and that because thereof the said circuit was plugged or turned in on North Anglin street, and that McCoy, in coming in contact with the said live wire, was killed, and that the said Oliger used ordinary care to discover said ground prior thereto, but failed to do so, then you are instructed to find for the defendant as to the second and third grounds of negligence charged by the plaintiffs in their petition." We are of the opin-

ion that this charge should have been given. It was called for by the evidence and not sufficiently covered by any other charge of the court. We therefore regard its refusal material error.

[9] The court further erred, we think, in refusing to give the Electric Company's special charge No. 30, which is as follows: "You are further charged that knowledge on the part of Tom Howell and Giles, linemen for the Electric Company, that C. W. McCoy was on the pole on the morning of January 31, 1908, would not of itself be notice to the Electric Light Company that the said McCoy was on said pole or would be on it at 3 o'clock in the afternoon, and you should so find and consider in the determination of the issues in this case." The question of knowledge on the part of the Electric Company that the deceased was at work on the afternoon of the day he received the injuries resulting in his death was an important one in the case. There was positive testimony that he was at work on the poles in the morning of that day, and that Howell and Giles, the employés of appellant sent out to discover and remove the trouble with the wires, saw him at that time at work, but we have discovered no testimony to the effect that any employé of the Electric Company had actual knowledge that he was so at work in the afternoon. In the state of the evidence, we think the special charge was probably necessary to properly guard the rights of the appellant on the issue of its notice of McCoy's dangerous position, and should have been given. It is not improbable that the jury might conclude that notice to appellant that the deceased was at work on the poles in the morning was sufficient of itself to justify the conclusion that they knew he was so at work in the afternoon when he was injured. Such conclusion, however, would not be warranted from that fact alone.

[10] We are further of the opinion that the court erred in refusing the Electric Company's special charge No. 17: This charge was to the effect that, if the jury should find "that the defendant built and constructed its line along the place where the contact was made prior to the time that the Telephone Company ran its drop wire into the Norseworthy house, and should further find that said wire of the Telephone Company, at said place where the contact was, was not insulated at all, and should find that, if the wire of the Telephone Company had been properly insulated at said place, no contact would have been made and current connected, and that it was negligence on the part of the Telephone Company not to insulate said wire at said place, and the failure to insulate said wire at said place by the Telephone Company was the proximate cause of the injury of the deceased, C. W. McCoy, which resulted in his death, and that the defendant did not know, or by the exercise of ordinary care could not have known, said fact, then you are instructed to find in favor of the defendant, and so say by your verdict." The evidence showed that the Electric Company's wire at the point of contact with the Telephone Company's wire had been insulated and that the Telephone Company's wire had not. There was also evidence to the effect that the noninsulation of the Telephone Company's wire would and probably did cause the transmission of the current onto the Telephone Company's wire, and we think that if the failure of the Telephone Company to insulate its wire was the cause of the current of electricity being communicated to the Telephone Company's wire, and was the proximate cause of McCoy's injuries, then the Electric Company was not responsible for the death of McCoy, and the plaintiffs were not entitled to recover in this suit.

[11] There are a number of assignments of error complaining of various rulings of the court bearing upon the issues between the plaintiffs and the Electric Company, which we have not discussed. Those assignments have been examined, and, while some of the rulings of which they complain may not be entirely free from error, yet none of them, except in so far as may be indicated by what has already been said, disclose reversible error; besides, some of the questions presented are not likely to occur on another trial.

On the issues between the Electric Company and the Telephone Company, the court charged the jury, in substance, that, if they believed that the Electric Company's wire at the place of contact with the Telephone Company's wire, at the time of the alleged injury to McCoy, was insulated and that the Electric Company was not guilty of negligence in maintaining its wire uninsulated at that point, and further believed that, had said telephone wire been insulated, the current of electricity would not have been conveyed to the telephone wire, and such failure of insulation was negligence, and such negligence, when separated and disconnected from the negligence of the Electric Company, if any, was the proximate cause of the injuries to McCoy, and that the negligence, if any, of the Electric Company was not the proximate cause of such injuries, or if the jury believed the Telephone Company did not leave a proper distance between its wires, and the electric wires were brought in contact, and further believed such act constituted negligence on the part of the Telephone Company, and further believed such negligence of the Electric Company was the proximate cause of the injuries to McCoy, or that, if McCoy received injuries which caused his death, under circumstances wherein he did not assume the risk and was not guilty of contributory negligence, and they believed

the Telephone Company failed to provide the proper means of ascertaining and locating dangerous currents on its lines, and failed to give proper instructions to McCoy with respect thereto, or failed to warn him of existing danger, and, if such warning had been given, the injury to McCoy would not have occurred, and further believed such acts or omissions constituted negligence on the part of the Telephone Company, and further believed such negligence, when separated and disconnected from the negligence of the Electric Company, was the proximate cause of the injury to McCoy, or if they believed the wire chief of the Telephone Company on January 31, 1908, and before the injury to McCoy, knew of the existence of the Electric Company's current on the telephone line and the dangers incident thereto, or by the exercise of ordinary care should have known the same, or might have known it by the use of the means and appliances at his hand, and that with such knowledge he failed to advise McCoy with respect thereto, and that but for such failure such injury would not have occurred, and further believed such omission was an act of negligence on the part of the Telephone Company, and further believed such negligence, when separated and disconnected from the negligence of the Electric Company, proximately caused the injury to McCoy, then, in either of said events, to find for the Electric Company and against the Telephone Company such sum as they might find in favor of the plaintiff.

These instructions are complained of by the appellant, the Electric Company, and are made the basis of its sixteenth, seventeenth, eighteenth, and nineteenth assignments of error. These assignments and the propositions accompanying them have been very carefully. considered with the conclusion reached that they, together with other instructions given, presented very fairly, fully, and correctly the issues between the appellant and the Telephone Company arising on appellant's cross-action. As stated, in effect, by counsel for the Telephone Company, one tort-feasor or wrongdoer may not have contribution or indemnity from another tort-feasor unless the one seeking the indemnity is wholly blameless as between himself and the other wrongdoer. Therefore the Electric Company was not entitled to recover against the Telephone Company in this case, unless it appeared, as between the two companies, that the negligence of the Telephone Company alone caused the injury to McCoy. The evidence was sufficient to warrant findings by the jury, as their verdict imports they did find, that the Electric Company negligently permitted its wire to sag so as to come in contact with the telephone wire, thereby producing a "ground" on the electric wire, and that the Electric Company knew, or was chargeable with knowledge, of said fact, prior. to the injury of McCoy in such

time as that, by the exercise of ordinary care, it could have discovered the ground and remedied the· same before McCoy was injured, or knew its wire was in contact with the telephone wire and that a ground was caused thereby, and by the exercise of ordinary care could have found where its wire was sagged and in contact with the telephone wire, but negligently turned on its current without warning McCoy of the dangers to which he would thereby be exposed in his work. If the Electric Company was guilty of negligence in either of the particulars above referred to, it cannot have indemnity from the Telephone Company.

In the· case of Missouri, Kansas & Texas Ry. Co. et al. v. Vance, 41 S. W. 171, cited by the Telephone Company, a very clear and accurate statement of the law relating to contributions between one tort-feasor and liability over in favor of one against the other will be found. Among other things, and referring to the defendants in that case, the court said: "The liability of each rests upon the negligence of each, independent of whatever may have been their intention to not commit a wrong. The negligence which makes either or both liable grows out of their acts in failing to perform their duties and observe the rules of caution and care that should have governed their conduct in the particulars wherein they were remiss. So that, if both were guilty of negligence which proximately contributed to the disaster, the participation by each in the negligence would preclude either from recovering against the other, except in those jurisdictions where the doctrine of comparative negligence prevails." We conclude there was no material error in any portion of the court's· charges, and that the assignments under consideration should be overruled.

The twenty-first assignment, complaining of the court's action in giving the Telephone Company's special charge No. 3, to the effect that, if the jury believed the injuries which resulted in the death of McCoy were caused by the negligence of the Electric Company in any of the respects submitted in the general charge, and should further believe that the said injuries were also caused by the negligence of the Telephone Company, and should further believe that said injuries were proximately caused or contributed to by the concurrent negligence of both of said companies, then there could be no recovery by the Electric Company over against the Telephone Company, will also be overruled. The acts of negligence charged and submitted to the jury as between the Electric Company and the plaintiffs were active acts of negligence as against any act of negligence charged against the Telephone Company and submitted to the jury for their. determination, and to instruct the jury in accordance with the latter company's special charge in question was not error. The evidence does

not show conclusively that the appellant's wires were properly insulated at the point of contact with the Telephone Company's wires, nor that they had the proper sag and were, at the time of the contact, properly constructed, nor does it so show that the Telephone Company placed its wires too near the Electric Company's wires. All of these matters were controverted issues under the testimony.

Nor did the court err in giving the Telephone Company's special charge made the basis of the Electric Company's twenty-third assignment of error. As said by counsel for the Telephone Company: "If the Electric Company negligently caused the contact between the electric wire and telephone wire by putting up secondary wires, and such proximately caused, or, concurring with some act of negligence charged against the Telephone Company, proximately contributed to cause, the light wire and the telephone wire to come in contact, then, under the law, the Electric Company is without right of indemnity as against the Telephone Company."

[12-14] Neither do we think the court erred in permitting the witness G. E. Hill to state, in effect, in answer to a hypothetical question put to him by counsel for the Telephone Company that, if in the operation of a light plant a ground should come on the line, and it was reported to some lineman that the line was grounded, and the witness was sent out to find the ground and came back after a search of two or three hours, and did not find it, and it was still known to be on, it would not be proper to turn the current of electricity on. The witness seems to have qualified himself sufficiently to speak as an expert, and we think the matter inquired about was the subject of expert testimony. But "whether a witness has qualified himself to testify as an expert upon any subject of inquiry is a question for the determination of the trial court, and its action will not be reversed by an appellate court unless a gross abuse of its discretion is made to appear." No such abuse of the trial court's discretion appears in this instance. Railway Co. v. Warner, 42 Tex. Civ. App. 280, 93 S. W. 489; Railway Co. v. Daniels, 9 Tex. Civ. App. 253, 28 S. W. 550, 711. If, however, the testimony was inadmissible for either of the reasons urged by the appellant, the same could not have resulted in any substantial injury to the appellant, and the error furnishes no ground for a reversal. What is here said applies with equal force to appellant's sixtieth assignment of error, and, without further discussion, that assignment will be overruled.

We conclude that none of appellant's assignments of error relating to the rulings of the court on the issues between it and the Telephone Company point out reversible error, and that the judgment of the court

below in favor of the Telephone Company should be affirmed; that, for the reasons indicated, the judgment in favor of the plaintiffs against the appellant, the Electric Company, should be reversed and the cause remanded for a trial as between them, and it is accordingly so ordered.

Affirmed in part, and reversed and remanded in part.