## HUGHES PRODUCTION CO. v. HAGAN et al.

### No. 3574.

Court of Civil Appeals of Texas. El Paso. Dec. 23, 1937.

Rehearing Denied March 3, 1938.

Collins & Collins, of Lufkin, Campbell & Leak, of Longview, Claude Williams and Lightfoot, Robertson, Saunders & Gano, all of Fort Worth, and Thompson, Knight, Baker & Harris, of Dallas, for plaintiff in error.

Jones & Jones, of Marshall, and J. P. Moseley, of Longview, for defendants in error.

WALTHALL, Justice.

On reconsideration of this case on motion for rehearing we have concluded that we were in error in some of our conclusions stated in a former opinion and now withdraw that opinion and say:

This suit was brought in the district court of Gregg county, Tex., by Mrs. Nira Dell Hagan, for herself and as next friend for her child, John Mell Hagan, a minor, and Mrs. Lela Hagan, as plaintiffs, against Hughes Production Company, a corporation, as defendant, to recover damages for the death of Simon W. Hagan, alleging that Mrs. Nira Dell Hagan and John Mell Hagan are the surviving wife and child of Simon W. Hagan, who died on or about June 3, 1935, as a result of certain specified negligent acts and conduct of defendant in operating its oil wells and thereby causing a disastrous fire and explosion on its lease in Gregg county, and that said negligent acts and carelessness directly and proximately caused the death of Simon W. Hagan, deceased. Plaintiff Lela Hagan is the surviving mother of the deceased, Simon W. Hagan, and claims no damages herein.

Plaintiffs allege that defendant had various machinery and equipment on the lease property such as separators, flow tanks, heating or treating plant; that all were dangerous instrumentalities, particularly the heating or treating plant, being a system of pipes and coils whereby oil was run through pipes and heat applied thereto. It is alleged that defendant had the nondelegable duty of safely operating said dangerous instrumentalities, and that by reason of the facts alleged appellant negligently violated said nondelegable duty; that defendant placed all of said instrumentalities under the sole and exclusive control of one Ed Rosa; that Ed Rosa had full authority to take any and all actions alleged as sole agent of defendant in control of such property.

Plaintiffs allege that on or about June 3, 1935, and long prior thereto, the deceased, in company with his family, had frequently visited at and about the lease property involved here, and particularly about well No. 2 on the lease, the well involved here, with the consent and at the invitation of defendant, and at times Ed Rosa was in charge of the lease as employee of defendant, and with consent and knowledge of defendant, expressed or implied, that while the deceased, Simon W. Hagan, was near (well No. 2), defendant, through its agents, negligently and carelessly caused or permitted quantities of gas to explode or ignite, by reason of which and as a proximate result the deceased received severe burns and personal injuries from which deceased suffered physical and mental pain and anguish, and which resulted in his death. The petition at length sets up the several acts of defendant assigned as negligence, and which the trial court, by special charges, submitted to the jury.

Plaintiffs, as items of expense for which they sought recovery, set out medical bills, nurse hire, hospital and burial expenses, and that in addition thereto plaintiffs sustained the pecuniary loss stated on account of the death of the deceased, and for which they sue.

Defendant answered by general demurrer, special exception, general denial, specially alleged that the deceased, Simon W. Hagan, was a trespasser upon the lease premises of defendant, having gone there of his own volition and not at the invitation of defendant; that he was not upon the premises on any business connected with the affairs of defendant, nor for the purpose of transacting any business with defendant, nor for furthering the affairs of defendant; that defendant owed no duty to deceased except not to willfully or wantonly

injure him, and alleged that his death was not brought about by any willful or wanton conduct on the part of defendant, nor by any negligence of defendant, but was the result of an unavoidable accident, or by the negligence of deceased, and which negligent acts are specified to be, contributory negligence in going upon the premises at the time he did, and remaining at the place where defendant's business was being conducted, and where gas and oil were being run, and where the deceased knew that it would be dangerous to strike a match or handle fire in any respect, and that an explosion might occur; but, notwithstanding such danger, the deceased struck a match at the time and place of his injuries, which caused the explosion resulting in his death; that deceased was negligent in trespassing upon the premises. Defendant specially denied that Ed Rosa was in full charge of the lease premises with full power to do the acts for defendant alleged by plaintiff, but that he was employed by defendant merely as a switcher or gauger, to flow its wells and make reports of production to the railroad commissioner as required; denied that Rosa had authority to hire help unless specially authorized by defendant.

The case was submitted to a jury on special issues.

The court refused to give defendant's requested charge for a verdict in its favor, and overruled its objections to the charges given. The court overruled defendant's motion for judgment non obstante veredicto, and entered judgment for plaintiffs as found by the jury. The court overruled defendant's amended motion for a new trial, and the case is before this court on writ of error.

### Opinion.

We will refer to the parties as plaintiffs and defendants, as in the pleading and briefs.

The first four propositions all relate to the insufficiency of the evidence to authorize the submission of any issue to the jury, or to support the jury's finding on the issues, and the judgment based thereon, and to the overruling of defendant's motion for judgment.

The evidence of the witness W. J. Melear was the only evidence heard on the trial as to the facts and circumstances occurring immediately preceding and leading up to and including the unfortunate happening of the explosion resulting in the death of Hagan and Ed Rosa. Some of the evidence may be immaterial to the issues under consideration, but, stated in narrative form, witness Melear testified, in answer to questions, substantially as follows:

"I live six miles from Kilgore on the Liberty City Road. That road goes between the Longview-Kilgore Highway and Liberty City. I am switching for the Magnolia, which means pumping and taking care of the lease producing oil. I live on the Magnolia lease known as the R. B. Walls lease, and my duties consist in getting production for the Magnolia. I work from eight to five o'clock in the day time and have supervision over seven wells. I have been on that particulaw lease something over a year and a half. Before that time I was doing the same kind of work on a different lease.

"I have followed oil field work practically all of my working days. I knew Simon W. Hagan during his lifetime, and had known him about a year and a half before his death. Mr. Hagan lived west of me, I will judge a distance of maybe a fourth or a half mile, or closer on an adjoining Magnolia lease of Alonzo Hicks. He was employed by the Magnolia during the time I knew him. He had the same kind of a job that I had, but on a different lease of the Magnolia. He was relief switchman. He relieved me on that lease and the man on the Hicks lease.

"I knew Ed Rosa during his lifetime. He lived right across the road from Mr. Hagan's house, that is on the Liberty City road. Mr. Rosa lived on the Hughes Production Company lease. We were all on a rural mail route. I got my mail at the nearest store there—the Miller Grocery Store. Mr. Rosa had a box out in front of his house. There was some lettering on his mail box. This lettering was 'Ed Rosa, Superintendent of the Hughes Production,' or something to that effect.

"I do not know how large that Hughes Production Company lease is. There was no other man living there on that lease besides Ed Rosa. Before the night that Mr. Hagan was injured I had only just passed this Hughes Production Company lease.

"I had known Ed Rosa prior to his death about a year and a half or two years—something like that. I had seen some man on that lease, once before I had seen work done on the lease during Ed Rosa's lifetime, but had seen no one when

Rosa himself was not there. This Hughes Production Company lease laid behind Ed Rosa's house and on the road described as the Liberty City road. I do not know how many wells there were on that lease. Mr. Rosa's house faces north. A little south and west of his house there was an oil well located in that vicinity.

"Mr. Golden was the lease man on the lease that was directly south and next to the Hughes Production Company lease. This well I have spoken of was southwest of Rosa's house. There was a road from the Liberty City road to Mr. Golden's house, and it ran generally in a southern direction from the Liberty City road. This road ran west of Rosa's house and immediately west of that road was a negro schoolhouse. This well I have spoken about was east of this road. A little southeast of this well there were some stock tanks and a heater to treat oil with a treating plant. I have seen this heating plant, but do not know how it was constructed. I can give you in a general way how it was operated while oil was being treated in it. As a general rule they flow their oil from the well through a heater into the separator and heat it to let the water drip out of the oil. I have seen this treater operated. The way the heat is applied is they had a fire under it, and the fuel used was gas.

"I had been on the lease on the night that Simon W. Hagan and Mr. Rosa were burned there. It was around close to eight o'clock at night when I first came to the Hughes Production Company lease on that date. I went from my house down to Mr. Rosa's in my car, and while at Mr. Rosa's house we talked. When I arrived at Mr. Rosa's house Mr. Simon W. Hagan was not there. We did not go inside of Mr. Rosa's house. The place where we were talking was out behind his house. He had a little smokehouse out there and we were out around this smokehouse and his chicken house. I know that Mr. Hagan had visited Mr. Rosa's house before that. They seemed to visit a right smart. They were across the road from each other. While Mr. Rosa and I were talking Mr. Simon Hagan came up. Just as Mr. Hagan walked up Mr. Rosa started out to go to the heater. He merely said he had to go to see about his heater. Mr. Hagan and I went with him. The three of us walked off together. Mr. Rosa did not say anything to Mr.

Hagan or to me at that time that we should go with him down there to see about it.

"After Mr. Hagan's presence there Mr. Rosa did not say anything about what he was doing down there with the heater. We did go on down to the heater. We passed the heater when we went by the heater we didn't stop at the heater, and we went on to the end of the vent line where the flare goes up to burn. All that I know about the connection is what kind of connection was there. The pipe was connected with the separator. I don't know whether there was an oil line from the heater to the separator or not, but the vent was connected with the separator. The separator separates the gas from the oil. There is no way of getting gas from a separator without running oil through it. When you run oil through it the gas is taken off and the oil goes into the stock tanks. That is the customary way of producing a lease to get your oil.

"We had gone to the end of the vent line. This vent line came through an old abandoned slush pit and had water standing in it. The extreme end of the vent pipe or flare end of it was south of the separator. The heater was north of the flare end of the vent pipe. The heater was south of the separator and between the separator and the flare. When we got to the end of this vent line it was not burning. The plug end of that vent line had a "T" on it for the flare pipe that goes up screwing into the end. It had a two inch plug. The place for a two inch plug that was screwed out and there was a nipple screwed into it about that long—about two feet or more—and it was open. Gasoline was running out of the end of that nipple. There was a can about two-thirds buried in a hole fixed to it, and I would say the can was probably two-thirds full.

"When I got there I dipped up some of the gasoline out of this can and put it in two five gallon cans. I turned and walked back toward Rosa's house with the gasoline and was taking the gasoline up to his house, but I did not get to the house. What happened was it looked like the whole country lit up behind and as soon as that flash occurred I turned and this flash appeared to come back as far as the heater, and maybe further. There was an open fire in that heater or treater. When I saw this flash I put down my can and later went back to the area. At

the time of this flash I saw Mr. Hagan and Mr. Rosa by the flash. They were in the fire. I immediately started to these men. They were running. Mr. Rosa had started toward Mr. Golden's house and Mr. Hagan followed him, and I started off to where the men were.

"Of course there was a crowd around them, and I met a man and he said 'let's cut the wells,' and I came and turned back and turned the well off and cut the fire out of the heater. The well I cut off was next to the negro schoolhouse. It was on the Hughes Production Company lease. The other man cut the well off, but it was flowing. We both walked down there. I cut the fire in the heater before we went to the well. We had to go by the heater to do that, as it was the closest.

"Mr. Hagan and Mr. Rosa were taken to a hospital and I visited them there after that. Mr. Hagan's arms and head were burned. Mr. Hagan lived twelve days, I believe, after that. I saw him every day during that period of time. Naturally I would ask him every time I would go there how he was feeling, and sometimes he would say he was feeling very well and then he would tell me about the suffering he had gone through the night before. I heard him groan with his burns. Part of the time he was conscious and part of the time unconscious.

"On this night I have described I did not notice whether there was any gasoline running out of this tank joint and nipple, or whether any gas was going up through the vent pipe. There was plenty of gas coming out of the container that was catching the gasoline."

On special issues submitted the jury found: Before and at the time of the fire in question, Ed Rosa was acting in the course of his employment by defendant in operating its properties on the occasion in question; Ed Rosa operated the properties of defendant on the occasion in question so as to permit large quantities of gas to explode or ignite, and that such operation was negligence and a proximate cause of the fatal injuries of the deceased, Hagan; the action of Ed Rosa in permitting the deceased, Hagan, to go to the place where the heater in question was operated was negligence, and a proximate cause of the death of deceased.

The jury found in favor of plaintiffs on the issue of contributory negligence, and that the death of the deceased was not an unavoidable accident.

On special issues requested and submitted the jury found that the deceased, Hagan, did not know that the defendant's premises were being operated in the manner in which they were being operated at the time the deceased went thereon.

Without quoting the evidence, it shows that deceased was on the premises in question frequently; that he operated an adjoining lease, and at one time operated the lease in question for some ten or twelve days during the absence of Ed Rosa on account of sickness. The evidence does not show that the deceased, Hagan, went on the premises of defendant at the time in question for or on account of any business with Rosa or the defendant company; nor does the evidence show an express invitation or permission on the part of Rosa to the deceased to be on the premises at the time he received his injuries; the evidence does show that the deceased knew, at the time, that Rosa was going to the heater, and that, without anything being said to indicate an invitation to the deceased to go with him to the heater, or not to go, the deceased voluntarily went with Rosa to the plant.

The evidence in the record does not show the cause of the explosion. The evidence sufficiently shows that Ed Rosa was defendant's sole representative in charge of its lease and was operating its plant. After describing the conditions about the plant and the way it was being operated, Melear, the only witness who testified as to its operation at the time of the explosion, said: "that is the customary way of producing a lease to get your oil."

Plaintiffs insist that defendant was negligent in operating its property so as to cause quantities of gas to escape into the atmosphere in the vicinity of an open fire, and "which the evidence shows caused the same to ignite or explode," and was negligent in permitting the deceased, Hagan, "to come upon the same and go into the place of danger created by its negligence."

The above two acts were found by the jury to constitute negligence and formed the basis of the court's judgment.

The evidence does not affirmatively show that the deceased was invited to come or be upon the premises at the time of the explosion, nor does the evidence show, nor is it claimed, that the deceased was on the premises on account of any character of business with either Rosa or the defendant, nor does the evidence affirmatively show what caused the explosion.

■ However, to do so, we would omit a consideration of the duty defendant owed to the deceased, Hagan, if any, when he went upon the premises of defendant.

"In every case involving actionable negligence, according to fundamental principle, an element necessarily essential to its existence, besides the elements of failure to perform the duty and injury from such failure, is that of the existence of a duty on the part of the particular defendant to protect the particular plaintiff from the injury."

"When no duty exists no legal liability can arise on account of negligence."

The above principles are more fully stated and discussed in 30 Tex.Jur. p. 649, and the authorities there cited in the notes, to which we refer.

■ In considering the duty defendant owed to the deceased, Hagan, in determining the question of negligence charged and found by the jury, we have concluded from the uncontroverted facts and all the facts found in the record that Hagan, in going upon the premises of defendant where the explosion occurred, was not an invitee, expressed or implied, but was a licensee, and that defendant owed him no duty to use care to keep the premises in such condition that persons going thereon without invitation would not be injured. Dobbins v. Missouri, K. & T. Ry. Co., 91 Tex. 60, 41 S.W. 62, 38 L.R.A. 573, 66 Am.St.Rep. 856. He takes the premises as he finds them. Street on Personal Injuries, Sec. 153.

■ After a careful review of the evidence, we have concluded that it does not show such condition of the premises themselves that persons going thereon without invitation may be injured by reason of the condition of the premises or their use, and, until such condition is shown as to disclose a want of such duty to the deceased, Hagan, as the law requires, the question or issue of negligence is not reached, for negligence in law can be predicated only upon a failure to use the degree of care required of one by law in the discharge of a duty imposed thereby.

Plaintiffs sue to recover damages on the ground of negligence. The witness Melear, who operated a plant on an adjoining property, similar to the one here, and who was more or less familiar with the plant in question, and who was on the premises with the deceased at the time of the explosion, the only witness who had gone over the plant at that time, and had testi-fied at length to conditions at the plant, and the manner of separating the oil and gas at that plant, said: "that is the customary way of producing a lease to get your oil."

Plaintiffs pleaded, and the court submitted, specific acts of negligence, in that Rosa, in operating the plant, caused or permitted large quantities of gas to explode or ignite, and whether such was negligence and a proximate cause of the injuries of the deceased, and whether Rosa, in permitting deceased to go to the place of the heater, was negligence, and a proximate cause of the death of deceased.

We have found no evidence in the record that a large or excess quantity of gas, or a quantity of gas above the usual quantity, was permitted to escape in operating the plant, and especially not such quantity of gas as tends to show a want of the duty defendant owed to the deceased, as above stated. As said by the Texarkana court, speaking through Judge Williams, in Tyreco Refining Co. v. Cook, 110 S.W.2d 219, 221: "There is no method known to the oil fraternity by which gasoline can be transferred from a storage tank into a tank * * * without fumes and vapors escaping from the gasoline," and "that gasoline vapors and fumes will not explode without a spark or flame."

It is not shown that the gasoline escaping was exceptionally hot or had lots of air in it.

■ We have found nothing in the record that justified the application of the doctrine of res ipsa loquitur. As said in Tyreco Refining Company v. Cook, supra, quoting from Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659, it is not the naked "injury, but the manner and attending circumstances of the accident that justify the application of the doctrine in an action for the breach of an ordinary duty."

No explanation of the explosion or its cause was made or offered to be made on the trial by defendant, but newly discovered evidence tending to show the cause of the explosion was submitted in defendant's motion for a new trial, and which we will later consider.

The jury awarded $11,112.77 personally to the wife, which included $1,012.77, inclusive of the expenses of the doctor, hospital, nurse, and funeral expenses, and awarded the minor child $15,000.

Defendant complains of the verdict and judgment as excessive. In view of a re-trial of the case we will not discuss the excessiveness of the verdict.

■ In its motion for a new trial on the ground of newly discovered evidence, defendant offered to prove by· H. E. Golden, whose affidavit was attached to and made a part of its motion, to the effect that Golden was present shortly before Ed Rosa died at the hospital, and that within an hour before his death Ed Rosa called Golden to his bedside and said: "Come here Harve; bend over. I want to tell you something; I know that I can't stand this much longer and am going to die, and I want to tell you that I lied to you. Cy did strike the match and this is the punishment that God gave me for what I did."

·Golden further stated in the affidavit, in substance, that Rosa was at that time conscious and understood the statement made to him because at said time Rosa told the affiant, Golden, within two weeks of the amount of oil that was in the tanks, and the day the oil was to run and how the well was to be operated in order to flow it, and that affiant kidded Rosa and told him that he was a long way from being dead. In the affidavit Golden stated that he had not told any one about the above statement prior to the trial, and the first time he told any one connected with the defendant about the statement was on May 22, 1936, and gave as his reason for not saying anything about it before he did not want to be a voluntary witness in the matter, but, had he been a witness and asked about any statement, he would have testified to the above statement.

The court refused to grant the motion.

The defendant pleaded as defense contributory negligence that "deceased struck a match to light his pipe at the time and place," which resulted in his death.

The court was not in error in overruling the motion for a new trial on the ground of newly discovered evidence. The declarations offered in evidence were not those of the deceased, Hagan, but were declarations of Ed Rosa. They were not admissions against interest in this suit, and were not a part of the res gestae.

■ There is no merit in defendant's points of error that the court admitted evidence of the lettering on the mailbox, "Ed Rosa, Superintendent of the Hughes Production," in view of the agreed stipula-tion in the record that Ed Rosa was the sole representative of defendant.

■ Plaintiff Nira Dell. Hagan inter-vened as administratrix of the estate of her deceased husband, and sought damages solely on account of the conscious mental and physical pain endured by the deceased from the time of his injuries until his death.

The court instructed the jury that they should not take into consideration any pain and suffering evidenced, if any, by deceased, and the jury found against the administratrix on the issue.

Defendant claims error in not sustaining defendant's motion to dismiss the intervention, thus enabling plaintiff, as administratrix, to introduce evidence of pain.

The statute, article 4675, as amended by Acts 1927, c. 239, Vernon's Ann.Civ.St. art. 4675, appears to recognize the two causes of action as coexisting and not inconsistent with each other when properly pleaded. Humble Oil & Refining Co. v. Ooley, Tex.Civ.App., 46 S.W.2d 1038; Jenney v. Jackson, Tex.Civ.App., 46 S.W. 2d 418. We cannot say the record shows reversible error as a matter of law in not sustaining defendant's motion to dismiss the intervention, on the ground claimed, that the evidence of pain tended to increase the damages. The jury evidently must have known that the deceased suffered pain without proof of the fact.

Defendant, by its several propositions, complains of the submission of each of the issues to the jury. We have carefully considered each and, without reviewing them severally, have concluded that under the defendant's pleadings, the stipulations, and the uncontroverted evidence, error is not· made to appear.

■ Defendant complains of the charge of the court in submitting to the jury the amount the jury might find, if any, by reason of the death of the deceased. The complaint is to the effect that the charge did not restrict the recovery of the minor plaintiff to such contributions as the minor would have received during his minority, and without proof as to whether he would have received any contributions after reaching his majority.

Defendant refers to Cleburne Elec. & Gas Co. v. McCoy, Tex.Civ.App., 149 S.W. 534; Texas & Pacific Ry. Co. v. Gullett, Tex.Civ.App., 134 S.W. 262; Texas & N.

O. Ry. Co. v. Mills, Tex.Civ.App., 143 S.W. 690. The authorities referred to sustain defendant's contention. The same may not occur on another trial, and we make no further comment.

For reasons stated, the case is reversed and remanded.